```
              UNITED STATES DISTRICT COURT
                DISTRICT OF NEW HAMPSHIRE
```

Gabrielle Marie Gregoire

    v.                                        Civil No. 13-cv-544-JL
                                                Opinion No. 2015 DNH 035

Carolyn Colvin, Acting Commissioner,
Social Security Administration

**ORDER ON APPEAL**

Gabrielle Marie Gregoire appeals the Social Security Administration's ("SSA") denial of her application for disability insurance benefits. An administrative law judge at the SSA ("ALJ") ruled that, despite her severe impairments of obesity and obstructive sleep apnea, Gregoire retains the residual functional capacity ("RFC") to perform her past relevant work as a hair stylist and assembler, and, as a result, is not disabled. See 20 C.F.R. § 404.1505(a). The Appeals Council denied Gregoire's request for review of the ALJ's decision, see id. § 404.968(a), with the result that the ALJ's decision became the SSA's final decision on Gregoire's application, see id. § 404.981. Gregoire then appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Gregoire has filed a motion to reverse the decision. See L.R. 9.1(b)(1). Among other things, she argues that the ALJ, in concluding that she was capable of performing her past relevant work, improperly weighed the medical opinions of record. The

Commissioner of the SSA maintains that the ALJ committed no error and has cross-moved for an order affirming the decision.  See L.R. 9.1(d).  After careful consideration, the court concludes that although the ALJ gave sufficient reasons for discounting the opinion of Gregoire's treating physician, he erred in relying upon the competing opinion of a non-examining state agency medical consultant who had not had the opportunity to review all the evidence of record.  The court thus grants Gregoire's motion to reverse (and denies the Commissioner's motion to affirm) the ALJ's decision.

In evaluating Gregoire's RFC, the ALJ had two medical opinions at his disposal:  that of Gregoire's treating physician, Dr. W. Kent Smith, and that of a state agency medical consultant, Dr. James Trice.  Dr. Trice's opinion, rendered in August 2011--shortly after Gregoire had applied for disability insurance benefits, and, significantly, prior to when much of the medical evidence was added to the record--was that Gregoire's obesity caused some exertional limitations.  Specifically, Dr. Trice found that Gregoire was capable of lifting and/or carrying 20 pounds occasionally, and 10 pounds frequently; could stand and/or walk about six hours in an eight-hour workday; and could sit for about six hours in an eight-hour workday.

Dr. Smith, who rendered his opinion roughly 10 months later, believed that Gregoire's obesity, coupled with lower extremity edema, imposed significantly more severe exertional limitations, i.e., she could lift and/or carry only 10 pounds occasionally, and less than that frequently; she could stand and walk less than two hours in an eight-hour workday; she could sit less than two hours in an eight-hour workday; and she required position changes every 30 minutes. In addition, Dr. Smith opined, Gregoire could never stoop, crouch, or climb stairs or ladders, and could twist only occasionally. Dr. Smith further reported that Gregoire should avoid all exposure to extreme cold or heat; humidity; fumes, odors, dusts, gases, and the like; or hazards such as machinery or heights. Such environmental elements, he explained, could "aggravate[]" Gregoire's asthma. In summary, Dr. Smith opined, Gregoire was incapable of working eight hours per day, five days per week.

The ALJ afforded Dr. Trice's opinion "substantial weight," finding it to be "consistent with the medical evidence as a whole." In contrast, the ALJ afforded "limited weight" to Dr. Smith's opinion, reasoning that the limitations he identified were "not supported by his treatment notes or the evidentiary record as a whole." The ALJ continued, explaining:

> [P]hysical examinations consistently demonstrate no swelling or tenderness of [Gregoire's] extremities.

> She has had normal muscle strength and tone.  There has
> been no observable edema at her sock lines.  Throughout
> much of the record, her obstructive sleep apnea is
> noted as mild.  Furthermore, treatment notes fail to
> document the claimant's report of such limitations.

Adopting Dr. Trice's opinion essentially in full, the ALJ concluded that Gregoire "has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b)."  Gregoire maintains that the ALJ's allocation of weight to the competing medical opinions, and, resultantly, this conclusion, was erroneous.  While the court does not agree that the ALJ erred in affording "limited weight" to Dr. Smith's opinion, it does agree that the ALJ could not have relied entirely on Dr. Trice's opinion in determining Gregoire's RFC.

The court first addresses Dr. Smith's opinion.  In arguing that the ALJ should have afforded more weight to it, Gregoire predictably invokes the SSA's rule that ALJs should "[g]enerally . . . give more weight to opinions from [the claimant's] treating sources," and, even if controlling weight is not afforded the opinion of a treating source, should "give good reasons" for the weight given.  20 C.F.R. § 404.1527(c)(2).  "The 'good reasons' requirement mandates that the ALJ's order 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers

4

the weight the adjudicator gave to the treating source's medical opinion and reasons for that weight." Delafontaine v. Astrue, 2011 DNH 005, at 38-39 (quoting Social Security Ruling ("SSR") 96-2p, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at *5 (S.S.A. 1996)). The ALJ's stated reasons for discounting Dr. Smith's opinion are not "good," Gregoire asserts, because they are not supported by evidence in the case record, and, in fact, contradict Dr. Smith's treatment notes.

So Gregoire, attempting to rebut the ALJ's statement as to the lack of "swelling," "tenderness," and "observable edema" in her extremities, claims that "Dr. Smith's progress notes . . . consistently document that [she] continued to have worsened lower extremity edema."  Mot. to Reverse (document no. 8) at 5 (citing Admin. R. at 187, 213, 217, 223).  The notes in question do not document any such thing.  What they document is that Gregoire complained of edema in her legs during her visits to Dr. Smith. Later in his notes from the very same visits, however, Dr. Smith reports that (exactly as the ALJ noted) his physical examinations did not reveal any swelling, tenderness, or edema.[1]  See Admin.

---

[1]Gregoire's memoranda endeavor to explain why Dr. Smith did not note any objective signs of swelling, tenderness, or edema. She speculates, for example, that she might have experienced some improvement in her edema by keeping her legs elevated, Mot. to Reverse (document no. 8) at 5, and points out that many of her

R. at 189, 214, 219, 225.  So the ALJ's observation that the medical record did not contain objective evidence confirming the supposed severity of Gregoire's edema was right on the mark, Gregoire's subjective reports notwithstanding.

Gregoire also argues that the fact that her edema improved over time is not grounds for disregarding Dr. Smith's opinion.  It is true that a claimant's successful response to treatment is not sufficient grounds upon which to reject a treating medical source's opinion.  See, e.g., Scott v. Astrue, 647 F.3d 734, 739-40 (7th Cir. 2011); Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989).  But the ALJ did not cite "improvement" of Gregoire's edema as one of the reasons he declined to afford much weight to Dr. Smith's opinion; as just noted, the ALJ relied on the lack of objective evidence supporting that opinion, a factor suggesting that the assessment was based on Gregoire's own subjective complaints.  It is well-established that an ALJ may reject the opinion of a treating physician for such reasons.  See, e.g., Reeves v. Barnhart, 263 F. Supp. 2d 154, 161 (D. Mass. 2003) (ALJ

---

visits with Dr. Smith took place in the morning, when, according to her subjective reports, her edema was normally improved, see Reply Memo. (document no. 13) at 3.  Reconciling the record evidence, however, is the ALJ's purview, see, e.g., Marshall v. Colvin, 2015 DNH 010, at 3, and this court cannot "reweigh the evidence or substitute its own judgment for that of the ALJ," Montero v. Colvin, 2013 DNH 108, at 5 (internal quotation marks omitted).  In any event, Gregoire is free on remand to attempt to persuade the ALJ to reconsider his view of this evidence.

did not err in discounting treating physician opinions that were, "for the most part, based on [the claimant's] own descriptions of pain and lack[ed] objective medical findings"); see also Hobart v. Astrue, 11-cv-151, 2012 WL 832883, at *9 (D.N.H. Feb. 9, 2012) (McCafferty, Mag. J.) (similar). The ALJ's decision to give "limited weight" to Dr. Smith's opinion was supported by the record and explained in sufficient detail to satisfy the "good reasons" requirement.[2]

---

[2] In what appears to be an attempt to bolster Dr. Smith's opinion, Gregoire points to a 2011 sleep study that concluded that she suffered from moderately severe obstructive sleep apnea. Although Gregoire claims that this study "provides objective evidence supporting Dr. Smith's assessment," Mot. to Reverse (document no. 8) at 6, the court is at a loss to see how the study supports Dr. Smith's opinion as to Gregoire's ability to perform work-related activities when Dr. Smith himself does not claim to have relied upon that diagnosis when rendering that opinion. Rather, as mentioned above, the only diagnoses Dr. Smith cited in his opinion were "morbid obesity," "lower extremity edema," and "asthma."

In her reply memorandum, Gregoire also argues that the ALJ, in evaluating Dr. Smith's opinion, failed to adequately consider each of the factors identified in 20 C.F.R. § 404.1527(c) as relevant to determining the weight to be given a medical opinion. That argument was not particularly well-developed in Gregoire's opening memorandum--only a single sentence in that memorandum expressly makes reference to the ALJ's alleged "fail[ure] to reflect sufficient consideration of the regulatory factors"--and is arguably waived. See, e.g., Hypertherm, Inc. v. Amer. Torch Top Co., 2008 DNH 216, at 6 n.5. It is also unavailing. More detail in the ALJ's opinion would have been preferable (and the court would encourage the ALJ on remand to address those factors in more detail). But an ALJ need "not explicitly take account of all the factors articulated in" § 404.1527(c), so long as the court is "able to discern the rationale the ALJ used to reach his determination and that determination is founded on 'good reasons' that are supported by substantial record evidence." Figueroa v.

7

The court's inquiry cannot end there, however; that the record supports the ALJ's allocation of weight to Dr. Smith's opinion is irrelevant if it does not also support the ALJ's reliance on Dr. Trice's opinion. It does not. As previously discussed, in affording "substantial weight" to Dr. Trice's opinion--which, again, appears to have formed the primary, if not the sole, basis for the ALJ's opinion that Gregoire remains capable of performing the full range of light work--the ALJ found that opinion to be "consistent with the medical evidence as a whole." As Gregoire points out, however, Dr. Trice rendered that opinion without the benefit of significant medical evidence-- medical evidence that, in some respects, contradicts the facts related in his opinion.

For example, records postdating Dr. Trice's opinion indicate that, contrary to his notation that Gregoire had "refuse[d] C-PAP" (continuous positive airway pressure), see Admin. R. at 45, Gregoire had "tried and failed" that treatment, id. at 215; see also id. at 248-49 (Gregoire "could not tolerate CPAP"). Other records from that period indicate that Gregoire's asthma had, in Dr. Smith's opinion, "deteriorated" over time, and a physical examination revealed "anterior wheezes" and an "increased

---

Astrue, 2012 DNH 101, at 15 (Barbadoro, J.). As just discussed, that requirement is satisfied here.

[expiratory] phase," id. at 219, 229, both of which lend support to that diagnosis and contradict Dr. Trice's comment that "[o]n physical examination she has no lung wheezing," id. at 45. And, significantly, a sleep study performed in late 2011 concluded that Gregoire suffered from "moderately severe" obstructive sleep apnea, see id. at 247-49, when previous records had shown that particular condition to be mild at worst.

As this court has previously held, "the fact that [a medical expert] did not review later medical records does not necessarily preclude the ALJ from relying on his RFC assessment." Ferland v. Astrue, 2011 DNH 169, at 11. "[A]n ALJ may rely on such an opinion where the medical evidence post-dating the reviewer's assessment does not establish any greater limitations, or where the medical reports of claimant's treating providers are arguably consistent with, or at least not clearly inconsistent with, the reviewer's assessment." Id. (internal citation and quotation marks omitted). Yet neither of those conditions is present here: the evidence just described is not entirely consistent with Dr. Trice's assessment, and potentially establishes that Gregoire's impairments impose greater limitations than are reflected in the records Dr. Trice had at his disposal. Accordingly, it was error for the ALJ to rely solely on Dr. Trice's opinion in determining Gregoire's RFC. See, e.g., Alcantara v. Astrue, 257 F. App'x

333, 334 (1st Cir. 2007); Padilla v. Barnhart, 186 F. App'x 19, 22 (1st Cir. 2006).

So while, for the reasons previously discussed, the ALJ was justified in not relying on Dr. Smith's opinion, he also could not rely upon Dr. Trice's opinion. And, "[a]bsent a medical advisor's or consultant's assessment of the full record, the ALJ effectively substituted his own judgment for medical opinion." Alcantara, 257 F. App'x at 334. This was error, for except in the rare case "where the medical evidence shows relatively little physical impairment," Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 17 (1st Cir. 1996)--which is not this case--an ALJ "cannot assess the claimant's RFC himself, 'since bare medical findings are unintelligible to a laypeson in terms of RFC.'" Levesque v. Colvin, 2014 DNH 191, at 2-3 (quoting Gordils v. Sec'y of HHS, 921 F.2d 327, 329 (1st Cir. 1990)). Instead, the ALJ should make an effort to obtain a reliable opinion as to the claimant's RFC by consulting a medical advisor to review the entirety of the record and provide an opinion as to the nature and severity of the claimant's impairments. See 20 C.F.R. § 404.1527(e)(2)(iii). Because the ALJ did not do so here, the court is constrained to

reverse the ALJ's decision and remand this case to the SSA for further consideration.[3]

For the foregoing reasons, Gregoire's motion to reverse the SSA's decision[4] is GRANTED, and the Commissioner's motion to affirm it[5] is DENIED. See 42 U.S.C. § 405(g). The clerk shall enter judgment accordingly and close the case.[6]

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: February 25, 2015

cc: Raymond J. Kelly, Esq.
    T. David Plourde, Esq.

---

[3]Gregoire also argues that the ALJ (a) failed to properly evaluate her subjective complaints and credibility, (b) "ignored" her husband's account of the severity of her impairments, and (c) lacked substantial evidence to support his conclusion that she could perform her past relevant work. While the court is skeptical of those arguments, it need not reach them because the ALJ's error in relying upon Dr. Trice's opinion necessitates reversal and remand in and of itself.

[4]Document no. 8.

[5]Document no. 9.

[6]Gregoire's counsel is reminded that under L.R. 7.1(e)(1), reply memoranda are limited to ten pages. Weighing in at eleven pages, Gregoire's reply memorandum violates the rule. As the violation is de minimis, the court will take no remedial action, but counsel is advised that the court expects compliance with all applicable rules of procedure in the future.

11